**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ALEXANDER WALKER, JR.,

      Petitioner,

v.                                   Case No. 8:14-cv-2535-T-33AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Petitioner Alexander Walker, Jr., an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). He challenges his convictions for trafficking in illegal drugs entered by the Circuit Court for the Sixth Judicial Circuit, Pinellas County. Respondent filed a response (Doc. 12), in which it concedes the timeliness of Walker's petition. Walker filed a reply (Doc. 17). Upon review, the petition must be denied.

## PROCEDURAL HISTORY

      In both case number CRC04-00285CFANO and case number CRC04-00286CFANO, Walker was charged with one count of trafficking in illegal drugs. (Doc. 14, Ex. 1.) A jury convicted him in case number CRC04-00285CFANO on August 31, 2005. (Doc. 14, Ex. 3.) The state trial court sentenced him to life in prison as a habitual felony offender ("HFO") on December 22, 2005. (Doc. 14, Ex. 4.) After a jury convicted Walker in case number CRC05-00286CFANO on October 5, 2006, he received a sentence of life in prison as a HFO. (Doc. 14, Exs. 6, 7.)

The state appellate court affirmed Walker's convictions in both cases but reversed his sentences because the State did not present sufficient proof to establish he qualified as a HFO. *Walker v. State*, 964 So.2d 886 (Fla. 2d DCA 2007); *Walker v. State*, 988 So.2d 6 (Fla. 2d DCA 2007). The state appellate court remanded for resentencing under the Criminal Punishment Code. *Id.*[1]

The Florida Supreme Court quashed the state appellate court's decisions, and remanded pursuant to *State v. Collins*, 985 So.2d 985 (Fla. 2008), which provides that when a habitual offender sentence is reversed because of insufficient evidence, the State may present evidence of a defendant's habitual offender qualification upon resentencing. *State v. Walker*, 992 So.2d 232 (Fla. 2008); *State v. Walker*, 994 So.2d 973 (Fla. 2008). On April 24, 2009, Walker again received a life sentence as a HFO in each case. (Doc. 14, Ex. 13, pp. 88, 89.) The state appellate court *per curiam* affirmed both sentences on March 17, 2010. (Doc. 14, Ex. 8.)

Walker filed a postconviction motion under Florida Rule of Criminal Procedure 3.850, as well as supplemental pleadings. (Doc. 14, Exs. 9, 11, 12.) The state postconviction court denied Walker's motions. (Doc. 14, Exs. 13, 14.) The state appellate court *per curiam* affirmed the denial. (Doc. 14, Ex. 15.) *Walker v. State*, 151 So.3d 1253 (Fla. 2d DCA 2014) (table).

## FACTS[2]

---

[1] The Criminal Punishment Code provides a range of permissible sentences for an offense. *See* § 921.002, Fla. Stat.; Fla. R. Crim. P. 3.992. However, if the State pursues a HFO sanction and the court determines that the defendant qualifies as a HFO, the court must sentence the defendant as a HFO unless it finds that such a sentence is not necessary for the protection of the public. § 775.084(3)(a)6., Fla. Stat. Walker was charged with first degree felonies. (Doc. 14, Ex. 1.) A defendant who qualifies as a HFO may be sentenced to life for a first degree felony. § 775.084(4)(a)1., Fla. Stat.

[2] This factual summary is derived from the trial transcripts.

## A.     Background

In 2002, Theodore Little faced criminal charges.  He began providing assistance as a confidential informant for the St. Petersburg Police Department to "work off" his charges, for which he ultimately received time served.  Afterwards, he continued as a confidential informant and was paid for providing this subsequent assistance.  Working as an informant, Little was the buyer in drug transactions relevant to Walker's cases.

Detective Robert Mailhiot explained that prior to such transactions on July 15, 2003, and July 24, 2003, he placed on Little a digital recording device to record the transactions. Mailhiot also gave Little money to make the purchases.  Mailhiot then followed Little to the location where he anticipated meeting Walker and conducted surveillance.  Following the transactions, Little provided Mailhiot with the drugs he purchased.  Subsequent testing showed the drugs to be heroin.

## B.     Events Of July 15, 2003: Case Number CRC04-00286CFANO[3]

On July 15, 2003, Little was directed to the home of Carrie Roberson, Walker's mother-in-law, to make contact with Walker.  Little asked Walker for a "ball," which Little explained is 3.5 grams of cocaine or heroin.  Walker left and proceeded to a different

---

[3] Walker was charged and tried for the drug transaction that occurred on July 15, 2003 in case number CRC04-00286CFANO.  Information concerning this transaction was also presented as *Williams* rule evidence in the trial on the charge for the July 24, 2003 events charged in case number CRC04-00285CFANO. *Williams* rule evidence is evidence of collateral crimes or acts that are factually similar to the charged offense. *See Williams v. State*, 110 So.2d 654 (Fla. 1959). Section 90.404(2)(a), Fla. Stat., provides:

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

In addition, in both trials, the State presented as *Williams* rule evidence facts surrounding two earlier purchases of heroin that occurred on July 1, 2003, and July 11, 2003.

location, where he provided an item to his niece, Nicole Roberson.[4] He directed her to give it to Little, and told her that Little would give her $1,000.

Nicole Roberson returned to Carrie Roberson's house, where Little was waiting. When Little got in her car, Nicole Roberson gave the item[5] to him, and he gave her cash. While still in the car, Little counted forty-five small bags of drugs. After Little exited the car, Nicole Roberson stated, she made contact with Walker down the street and gave him the money. The State played the audiotape from the recording device that was placed on Little. Mailhiot stated that he recognized the voices of Walker and Little on the recording. Forensic chemist Diane Davis later determined that the substance inside the small bags was heroin, and that the total weight of the heroin was 4.6 grams.

Detective Anthony Harris was the "close cover" unit officer during this transaction. He went to the area of Carrie Roberson's house prior to Little's arrival and observed the activity there. After Nicole Roberson left the house, Harris followed her. He saw Nicole Roberson's car and a car he previously had observed Walker driving stopped side by side in the middle of a street. Harris was in a position to see any exchange between the drivers of the cars, but did not see such activity. He also did not observe whether Walker was driving the car.

## C.    Events Of July 24, 2003: Case Number CRC04-00285CFANO

On July 24, 2003, Little again went to Carrie Roberson's house. Once inside, Little

---

[4] Nicole Roberson testified that she had been arrested for trafficking in illegal drugs as a result of this incident and was still facing charges.

[5] Nicole Roberson testified that Walker gave her a napkin, which she provided to Little. She stated she did not know what was inside the napkin. Little testified that Roberson gave him a plastic bag containing smaller bags of drugs.

spoke with Juanita Walker, who was Walker's wife, Precious Nelson, who was Walker's niece, and others.  After some time, Walker and an unknown man referred to as Deemo[6] arrived.  Walker proceeded into the kitchen.  In the living room, by the television, Deemo handed Little the drugs.  In Deemo's presence, Little counted fifty-six small bags of heroin.  The State played an audio tape from the recording device Walker wore, and Mailhiot identified one of the voices on the tape as Walker's.  Chief forensic chemist Michael Gilbert testified that the substance in the fifty-six small bags tested positive for heroin and had a total weight of 4.6 grams.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[6] In the state court record, this person is referred to as Deemo, Demo, and Dumo.  As the postconviction court did, this Court refers to the individual as Deemo.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.   "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."   *Cone*, 535 U.S. at 693.   In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."   *Renico v. Lett*, 559 U.S. 766, 779 (2010).   *See also Cullen v. Pinholster*, _ U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without written opinion, the state appellate court affirmed the denial of Walker's postconviction motion.   The state appellate court's *per curiam* decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398.  Walker bears the burden of overcoming by clear and convincing evidence a state court factual determination.   "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

### EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364,

365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).   The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999).  *See also Murray v. Carrier*, 477 U.S. 478 (1986).   To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.  *United States v. Frady*, 456 U.S. 152, 170 (1982).  The petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may also obtain federal habeas review of a procedurally defaulted claim

if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Walker must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly

deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Ground One**

Walker argues that counsel was ineffective in each case for not raising a challenge to the calculation of the heroin weight when he moved for a judgment of acquittal. In each case, the State was required to prove that the amount of heroin was at least 4 grams to establish trafficking in illegal drugs. *See* § 893.135(1)(c), Fla. Stat.

**A.    Case Number CRC04-00285CFANO (July 24, 2003 Transaction Inside The House Involving Deemo)**

Walker contends that counsel was ineffective for failing to argue that because the State did not prove each of the fifty-six small bags contained heroin before combining them for testing, the necessary weight was not established. The state court summarily denied Walker's claim:

> The Defendant contends that counsel was ineffective for failing to move for a judgment of acquittal on the ground that the State failed to prove that the Defendant possessed the requisite amount of heroin to support a trafficking charge. Specifically, he contends that each of the 56 bags of

heroin should have been individually tested before they were combined and weighed.  He argues that but for counsel's error, the outcome of the trial would have been different.

   The Defendant's claim is without merit and directly refuted by the record.  At trial, forensic chemist Michael Gilbert testified that each of the 56 bags were individually tested to confirm that the substance contained within them was heroin.  Once it was determined that each individual bag contained heroin, they were combined, weighed, and tested.  Gilbert went on to testify that the substance was in fact heroin and weighed a total of 4.6 grams. Based on Gilbert's trial testimony, there was no viable basis for trial counsel to object or move for a judgment of acquittal on the grounds raised by the Defendant.  Accordingly, Ground One is denied.

(Doc. 14, Ex. 13, pp. 90-91) (court's record citations omitted).

   The record supports the state court's finding.  At trial, the State asked Gilbert about testing and weighing the substance:

Q:   Did you perform any analysis or tests on the contents of that bag?

A:   Yes, I did.

Q:   Please explain what those tests were for the jury.

A:   Actually, in this particular instance there were 56 individual baggies. Each of them were individually tested to make sure that they were consistent with each other, as well as in this case heroin.  And then they were combined, weights were obtained, and then I performed a series of chemical and instrumental analyses which are designed to identify the substances to the exclusion of all others.

Q:   Did you weigh the substance prior to beginning the tests?

A:   Yes, I did.

Q:   How much did the substance weigh?

A:   Actually, I broke this one up into four sub-exhibits based on the color of the material inside the baggies, the small little baggies in here, as well as the color of the baggies.  So I had items 1-A, B, C, and D.  Item 1-A was 0.1 gram.  Item 1-B was 0.6 grams.  I-C was 1.3 grams and item D was 2.6 grams.

Q:   What was the total weight?

> A:     Total weight was 4.6 grams.
>
> Q:     You indicated that you weighed it and tested it in four different batches
>        or just weighed it in four different batches?
>
> A:     It was weighed and tested in four separate batches.

(Doc. 14, Ex. 2, pp. 226-27.) The record shows that the state court accurately summarized

Gilbert's testimony that the substance contained in each bag tested positive for heroin.

Accordingly, the record supports the state court's conclusion that counsel did not perform

deficiently in failing to move for a judgment of acquittal on the basis alleged by Walker.

Walker does not show that the state court's determination was an unreasonable application

of *Strickland* or was based on an unreasonable determination of the facts.

In addition, Walker contends in the federal habeas petition that counsel was

ineffective for not raising an inconsistency in Mailhiot and Gilbert's testimony.  To the extent

that Walker's claim is liberally construed as raising the claim presented in ground eight of

the postconviction motion, which concerned alleged discrepancies regarding the amount

of heroin, he cannot obtain relief.  The state court rejected this claim:

> The Defendant contends that counsel was ineffective for failing to
> depose . . . Michael Gilbert to expose evidence of tampering.  Specifically, he
> claims that Detective Mailhiot's weight of the heroin was different from
> Gilbert's and Gilbert admitted this during cross-examination.  The Defendant
> believes this discrepancy indicates that the heroin was tampered with and
> that the heroin admitted into evidence at trial was not the same heroin
> contained in the 56 bags.  He claims that counsel failed to investigate this
> weight discrepancy and "probable tampering." . . . The Defendant contends
> that but for counsel's errors, the outcome of the trial would have been
> different.
>      The Defendant's claim is without merit.  As the Defendant indicates,
> Gilbert testified on cross-examination that Detective Mailhiot's [sic] assigned
> a weight to the heroin that was different than the weight he had given the
> heroin.  However, Gilbert went on to testify that this was a result of packaging
> issues.  He testified that when he weighed "the entire exhibit with the
> packaging . . . that weight did correspond with what [law enforcement]

submitted as their weight."   The differing weights were also explained by Detective Mailhiot, who testified that when he initially weighed the heroin he did so while it was still contained in the 56 bags, "[s]o all the miniature bags are weighed with the narcotics."   He further explained that "when the lab weights [sic] it, they take the narcotics out of the bags."   Detective Mailhiot and Gilbert's testimony make clear that Detective Mailhiot's heroin weight included the weight of the bags the heroin was packaged in, while Gilbert's weight was based purely on the heroin itself – thoroughly explaining the discrepancy.   Consequently, any motion seeking to exclude the heroin based this [sic] alleged tampering would have been meritless.   Counsel cannot be deemed ineffective for failing to file a meritless motion.   See Freeman v. State, 858 So.2d 319 (Fla. 2003).

(Doc. 14, Ex. 13, p. 93) (court's record citations omitted).

This determination is supported by the record.   Mailhiot testified:

Q:     How many heroin approximately goes into each of the small baggies? In other words, what was the total weight of the heroin in this case?

A:     Total weight of all of the 56 baggies of heroin was 4.6 grams.

Q:     Now, is that the lab weight or is that your weight?

A:     That's the actual weight from the laboratory.

Q:     When you weighed them initially, how do you weigh it?

A:     When I weigh them initially, it's weighed inside the packaging.   So all the miniature bags are weighed with the narcotics.   When the lab weighs it, they take the narcotics out of the bags.

(Doc. 14, Ex. 2, p. 198.)   In addition, Gilbert testified:

Q:     And when you received that exhibit for testing, you were aware that the weight that law enforcement had assigned to that substance was different than the weight you ultimately got; is that right?

A:     The weight when submitted to us was different from the final weight that I had, yes.

Q:     That's a result of packaging issues?

A:     Yes, it was, because I did weigh the entire exhibit with the packaging and that weight did correspond with what the agency submitted as

their weight.

(Doc. 14, Ex. 2, pp. 230-31.)  The record therefore supports the state court's conclusion with respect to this claim.  Walker does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in reaching this decision.

Walker also states in the federal habeas petition that both Mailhiot and Gilbert testified that the heroin weighed 4.6 grams.  Walker appears to argue that counsel should have argued one of these witnesses must have given inaccurate testimony because Mailhiot testified about the weight of the heroin when it was in still in the bags after initially being recovered, and Gilbert testified about the weight of the heroin after it was removed from the bags.  He believes this is "evidence of coaching and corroborating a weight to find the threshold amount necessary to support a trafficking offense."  (Doc. 1, p. 8.)  This allegation was not presented to the state court in Walker's postconviction motion.  (Doc. 14, Ex. 9, pp. 12-16; 27.) A petitioner may not present a particular factual instance of ineffective assistance of counsel in his federal petition that was not first presented to the state court. *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005); *Johnston v. Singletary*, 162 F.3d 630, 634-35 (11th Cir. 1998); *Footman v. Singletary*, 978 F.3d 1207, 1211 (11th Cir. 1992). When a petitioner raises an ineffective assistance of counsel claim in state court, but alleges different supporting facts for the same claim in his federal habeas petition, he fails to fairly present the federal claim to state court.  *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made.") (internal citations omitted).  *See also Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance in state court

preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court.").

Walker's current assertion is unexhausted because it was not fairly presented to the state court. He cannot return to state court to file an untimely, successive postconviction motion. Fla. R. Crim. P. 3.850(b), (h). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Walker does not establish the applicability of an exception to the procedural default rule. Notwithstanding the default, Walker fails to show relief. Although Mailhiot did state that the heroin weighed 4.6 grams, his testimony is clear that he was referring to the weight established by the lab. (Doc. 14, Ex. 2, p. 198.) Accordingly, Walker shows no entitlement to relief on Ground One with respect to case number CRC04-00285CFANO.

## B.   Case Number CRC04-00286CFANO (July 15, 2003 Transaction Inside The Vehicle Involving Nicole Roberson)

In a similar claim, Walker contends the State failed to prove that each of the forty-five bags contained heroin before the substance was mixed, tested, and weighed. He states that "[t]he 'chunky brown material'" in the bags "was not individually weighed for accuracy; and the chemist drew her weight from the aggregate." (Doc. 1, p. 9.) Therefore, he claims, counsel was ineffective for not moving for a judgment of acquittal on the basis that the State failed to establish the requisite amount of heroin.

Walker raised this claim in his postconviction motion. The state court rejected his argument:

> The Defendant contends that counsel was ineffective for failing to move for a judgment of acquittal on the ground that the State failed to prove that the Defendant possessed the requisite amount of heroin to support a trafficking charge. Specifically, he contends that each of the 45 bags of

heroin should have been individually tested before they were combined and weighed.  He argues that but for counsel's error, the outcome of the trial would have been different.

The Defendant's claim is without merit and directly refuted by the record.  At trial, forensic chemist Diane Davis testified that each of the 45 bags were individually tested to confirm that the substances contained within were consistent – meaning that all the substances were the same.  Once she determined that each bag contained the same substance, the contents were combined, weighed, and tested.  Davis testified that the substance in the bags was in fact heroin and weighed a total of 4.6 grams.  Based on Davis's testimony, there was no basis for counsel to object or move for a judgment of acquittal on the grounds raised by the Defendant.  Accordingly, Ground Fourteen is denied.

(Doc. 14, Ex. 13, p. 96) (court's record citation omitted).

The record supports the state court's decision.  Forensic chemist Diane Davis

testified:

Q:     And describe for the jury when you receive the - - when you received State's Exhibit 1, what condition was it in?

A:     The - - this bag came to the laboratory in pretty much the same condition as it is here today. . . .
That [sic] contents of the bag contained a series of these tiny little zips. I tested each of these little zips by doing a screening test.  They were - - they tested consistent.
And at that time, I combined them and determined the weight, and the weight taken and reported in my report is just of the brown chunky material that was within all of the packaging.  The packaging was not included in the weight.

Q:     What did you determine the brown chunky material to be based on your testing?

A:     I determined it to be heroin, to contain heroin.

Q:     What type of test did you perform in order to come to this conclusion?

A:     I did a color test, a test called thin layer chromatography and a third test called GC or abbreviated GCMS. . . .

Q:     And after you concluded all of these tests, did it confirm that it was heroin?

A:      Yes.  The total results of all three tests were consistent with heroin and were confirmed for the presence of heroin.

Q:      What was the total weight of the - - what was the total weight of the heroin?

A:      The total weight of the items that are contained within this bag is 4.6 grams of heroin.

Q:      You said that's excluding the tiny little bag that you just - - the brown chunky substance?

A:      Yes.  It's excluding the tiny little bags . . . So the weight does not include any of that packaging.

(Doc. 14, Ex. 5, pp. 279-80.)  Davis further testified on cross-examination:

Q:      [ ] What I want to know, do you specifically take a sample from bag number one and then bag number two and bag number three, or do you dump them all into one and just take a sample out of everything?

A:      [ ] [T]he way I process the samples, since there was 45 of these tiny little zips, the 45 tiny little zips were green and then some were clear in color.  So I separated the green ones from the clear ones.
Looking at the 25 green ones and the 20 clear ones, they all looked the same, same consistency.  They were pretty much the same.  I then opened up each of the 45 total baggies, took a small sample and performed a test called thin layer chromatography.

Q:      You did that for - - you're saying you took them out of all of them together?

A:      I took one - - no, one from each little baggie.  So I put - - I did 45 single thin layer chromatography tests on each of these tiny baggies.

Q:      Individually, all individual?

A:      Individually.  I did 45 independent thin layer chromatography tests.

(Id., pp. 285-86.)  Accordingly, Walker fails to establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  Ground One warrants no relief.

**Ground Two**

Walker asserts he was present when the drug transactions occurred but was not involved in them. He claims counsel was ineffective for misadvising him not testify in support of a "mere presence" defense, thus interfering with his right to testify. (Doc. 1, p. 13.) Walker claims that because there was no physical evidence or testimony showing that he knew a drug deal occurred, and no money was recovered, his testimony was necessary to show that he never gave any drugs to Little. Walker also asserts that his testimony would have allowed the jury to compare his voice and the voice on the audio recordings. Walker raised this claim of ineffective assistance of counsel in his postconviction motion, in which he also alleged that he would have testified he was not known by Al, as witnesses referred to him at trial, but instead went by Jack. (Doc. 14, Ex. 9, pp. 31, 703.)

Walker claims that counsel incorrectly informed him that if he testified, the jury would learn of the nature of his prior convictions, information about his arrests, and the fact that he had previously been released from prison.[7] He also states that counsel incorrectly told him that the defense would lose its opening and closing arguments if he testified.[8] The state court rejected this claim with regard to both cases.

_____

[7] A witness may be asked the number of his previous convictions for felony offenses or offenses involving dishonesty or a false statement. *See* § 90.610(1), Fla. Stat. However, when a witness "attempts to mislead or delude the jury about his prior convictions, the witness is subject to further questioning concerning his convictions 'in order to negate any false impression given.'" *Pryor v. State*, 855 So.2d 134, 136 (Fla. 1st DCA 2003) (quoting *Fotopoulos v. State*, 608 So.2d 784, 791 (Fla. 1992)).

[8] As the state court noted in evaluating another of Walker's claims, Florida Rule of Criminal Procedure 3.250 stated in part that if a criminal defendant offers no testimony at trial, or only his own testimony, he is entitled to the final closing argument. This portion of Rule 3.250 was repealed by § 918.19, Fla. Stat., which provides that in criminal trials the prosecutor is entitled to the first and last closing argument. (Doc. 14, Ex. 13, p. 99.) The adoption of § 918.19, Fla. Stat., was effective October 1, 2006. In addition, the Florida Supreme Court subsequently amended Rule 3.250 and created Rule 3.381 setting forth this procedure. *In re Amendments to the Florida Rules of Criminal Procedure–Final Arguments*, 957 So.2d 1164 (Fla. 2007).

**A.** **Case Number CRC04-00285CFANO (July 24, 2003 Transaction Inside The House Involving Deemo)**

Walker raised this claim with regard to case number CRC04-00285CFANO as

ground ten of his postconviction motion.  The state court rejected the claim:

> When analyzing a claim of ineffective assistance of counsel for advising a defendant not to testify, a postconviction court must address two points: (1) "whether the defendant voluntarily agreed with counsel not to take the stand" and (2) "whether counsel's advice to defendant 'even if voluntarily followed, was nevertheless deficient because no reasonable attorney would have discouraged [defendant] from testifying.'" Simon v. State, 47 So.3d 883, 885 (Fla. 3d DCA 2010) (quoting Lott v. State, 931 So.2d 807, 819 (Fla. 2006)).
>
> The record reflects that the Defendant here voluntarily agreed with counsel's advice not to testify in this case.
>
> . . .
>
> This Court must now turn to the second point of inquiry and determine whether counsel's advice to the Defendant not to testify was nonetheless deficient, meaning that "no reasonable attorney would have discouraged [the Defendant] from testifying." See Simon, 47 So.3d at 885 (quoting Lott, 931 So. 2d at 819).  If the Court cannot determine from the face of the record whether counsel's advice was reasonable, then an evidentiary hearing is required.  Id.  Counsel's advice discouraging the Defendant from testifying was not deficient in this case.  The Defendant contends in his motion that he was relying on a defense of "mere presence."  The record also reflects that counsel presented this defense to the Court during his motion for judgment of acquittal and to the jury during closing argument.  Because the Defendant's defense theory was that he was merely present when the drug transaction in this case took place, it would have been harmful to this defense theory if the jury were to hear that the Defendant had previously been convicted of six felonies, which were also crimes of dishonesty.  Moreover, the State's case against the Defendant relied largely on a digital recording of the drug transaction.  In response, defense counsel argued that there was more than reasonable doubt that the voice on the recording even belonged to the Defendant. If the Defendant had taken the witness stand, then the members of the jury would have been able to conclude for themselves whether the voice on the recording belonged to the Defendant, thereby eliminating the reasonable doubt.  Thus, the record reflects that there was a strategic basis behind defense counsel's advice to the Defendant not to testify, which was not unreasonable in this case. . . . Because the face of the record indicates that counsel's advice to the Defendant not to testify was supported by a sound defense strategy, an evidentiary hearing is not required to assess the reasonableness of counsel's advice. . . .

Further, the record refutes the Defendant's allegations of prejudice. Even if the Defendant had testified as he claims he would have, there is not a reasonable probability that the outcome of the trial would have been different.  See Haliburton [v. Singletary], 691 So.2d [466,] 470 [(Fla. 1997)]. The Defendant alleges that he would have testified that Precious Nelson never called him in order to set up a drug transaction between him and Theodore Little and that he did not have any knowledge that a drug transaction had taken place or have anything to do with the money or the drugs.  Counsel argued these exact points throughout the trial, so the Defendant was not unable to present his "mere presence" defense. Additionally, the Defendant claims that he would have testified that he does not go by the name "Al," but instead is known by the name "Jack."  While common sense would suggest that "Al" is a nickname for someone named "Alexander," the witnesses at trial referred to the Defendant as both "Al" and "Alexander" interchangeably.  Further, if the Defendant had testified to reiterate these points, he would have exposed himself to cross-examination, the jury would have learned at least the number of his prior felony convictions, and the jury would have heard his voice and been able to compare it to that on the recording.  The jury would have been able to weigh the credibility of the Defendant's testimony as with any other witness.  After considering the foregoing, the Court finds that there is not a reasonable probability that the outcome of the trial would have been different had the Defendant testified.  Accordingly, this claim is denied.

(Doc. 14, Ex. 14, pp. 520-22) (court's record citations omitted).

Walker argues that the state court erred in its analysis of the deficiency prong.  He argues that although he agreed with counsel's advice not to testify, the basis of that advice was incorrect under Florida law.  Walker asserts that counsel's ineffective assistance "deprived him of his ability to intelligently choose whether to exercise or waive his Fifth Amendment rights."  (Doc. 1, p. 14.)  Even assuming that counsel's performance was deficient, Walker cannot obtain relief.  Walker does not demonstrate that the state court made an objectively unreasonable determination when it concluded that he failed to show prejudice because there was no reasonable probability that the outcome of trial would have been different had he testified.

The state court took into account that counsel addressed many of the matters about

which Walker asserts he would have testified.  For instance, counsel argued during his motion for judgment of acquittal that there was no testimony or evidence Walker acknowledged the drug transaction or was involved with the money or drugs, and that the evidence only showed proximity.  (Doc. 14, Ex. 2, pp. 261-64.)  Counsel also asserted in closing arguments that the evidence merely demonstrated Walker was present when Deemo sold drugs to Little, and there was a lack of evidence that Walker was aware of what was going on, or that any money or drugs were passed between Deemo and Walker. (Id., pp. 281, 316-18.)  Counsel also argued both in the motion for judgment of acquittal and in closing arguments that the State failed to present any physical evidence, such as fingerprints, connecting Walker to the drugs.  (Id., pp. 261-62, 317.)

In closing arguments, counsel questioned the reasonableness of Mailhiot's identification of Walker's voice on the tape based on his experience of reviewing about an hour's worth of tape.  (Id., pp. 275-77.)  Counsel also argued that Little did not explain the tape in his testimony because he was confused about different dates and events, and noted that Little did not identify any voices on the tape.  (Id., pp. 275-76.) Counsel further pointed out that statements attributed to Walker were not necessarily about drugs, and that the jury did not know how Walker sounded and had nothing with which to compare his voice.  (Id., pp. 316-17.)  In addition, counsel argued in the motion for judgment of acquittal that there was no evidence Walker was known as Al.  (Doc. 14, Ex. 2, pp. 261-64.)

Walker does not establish a reasonable probability that his testimony about these matters would have changed the outcome of trial.  While Walker merely asserts that the jury could have compared his voice to that on the tape, he does not argue or present any evidence to show that it was not his voice. Additionally, as the state court noted, Walker

was known as Alexander and Al.  (Doc. 14, Ex. 2, pp. 238-40, 242, 247, 251-56.)  Finally, as the state court noted, the jury would have heard at least the number of Walker's prior felonies had he testified and could consider this in determining his credibility.

Accordingly, Walker does not establish that the state court's finding that he failed to show prejudice was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.  He is not entitled to relief on this portion of his claim.

**B.    Case Number CRC04-00286CFANO (July 15, 2003 Transaction Inside The Vehicle Involving Nicole Roberson)**

With respect to case CRC04-00286CFANO, the state court found:

The Court finds that this claim is without merit for largely the same reasons provided in Ground Ten. . . .
    The record in this case reflects that the Defendant voluntarily agreed with counsel's advice not to testify in this case.
. . .
    [ ] As in Ground Ten, the Court finds that counsel's advice was not deficient in this case, and that the reasonableness of counsel's advice is apparent from the face of the record.  Again, the Defendant states that his sole defense in this case was "mere presence."  The record in this case reflects that counsel presented this defense to the jury during closing argument and further argued that the evidence did not prove that the Defendant was even there.  Because the defense presented at trial was that the Defendant was either merely present during the drug transaction or that he was not even present at all, it would have been harmful to this defense theory for the jury to hear, in the least, that the Defendant has been convicted of at least six felonies, which were crimes of dishonesty.  Further, counsel emphasized the reasonable doubt that was created by the fact that the State only asked Detective Mailhiot to identify the Defendant's voice on the tape recording.  Counsel pointed out that Theodore Little, who had known the Defendant since they were children, and Nicole Roberson, the Defendant's niece, were not asked to identify the Defendant's voice on the recording.  Had the Defendant taken the stand to testify in this case, the jury would have then been able to compare the Defendant's voice to the recording for themselves, thus eliminating the reasonable doubt that counsel identified.  Thus, the face of the record demonstrates that there was a strategic basis behind defense counsel's advice to the Defendant not to testify, which was not unreasonable

in this case. . . .

       Moreover, the record refutes the Defendant's allegations of prejudice. Even if the Defendant had testified as he claims he would have, there is not a reasonable probability that the outcome of the trial would have been different.  See Haliburton, 691 So.2d at 470. The Defendant alleges that he would have testified that he never gave Nicole Roberson any drugs to deliver to Theodore Little and that he never had any knowledge that a drug transaction occurred or had anything to do with any money or the drugs. Counsel argued these exact points to the jury during his closing argument and further argued that there was not conclusive evidence that the Defendant was the person on the recording or that he was even present for the drug transaction. The Defendant was therefore able to present this defense through his attorney at trial without having to subject himself to the consequences of cross-examination.  As in Ground Ten, the Defendant also alleges that he would have further testified that he does not go by the name "Al," but that his nickname is "Jack."  Again, while common sense would suggest that "Al" is a shortened name for "Alexander," both Theodore Little and Nicole Roberson referred to the Defendant as both "Al" and "Alexander" interchangeably during their testimony, and further identified the Defendant as the person involved in the drug transactions.  If the Defendant had testified to reiterate these points, he would have exposed himself to cross-examination, the jury would have learned at least the number of his prior felony convictions, and the jury would have heard his voice and been able to compare it to that on the recording.  The jury would have been able to weigh the credibility of the Defendant's testimony as with any other witness.  Given the foregoing, there is not a reasonable probability that had the Defendant testified in this case the outcome of the trial would have been different. Accordingly, the Defendant has not shown prejudice and this claim is denied.

(Doc. 14, Ex. 14, pp. 527-29) (court's record citations omitted).

       Again, Walker argues that the state court erred in its analysis of *Strickland*'s deficiency prong because counsel's advice not to testify rested on an incorrect statement of the law.  Even assuming counsel's advice was deficient, Walker does not show that the state court erred in finding that he failed to demonstrate resulting prejudice because there was no reasonable probability that his testimony in support of a "mere presence" defense would have changed the outcome of trial.

       As the state court discussed, counsel argued a lack of evidence, which Walker

states he would have addressed in his testimony. During closing argument, counsel asserted that Detective Harris's observations of the vehicle that Nicole Roberson approached following the transaction were not consistent with prior instances in which he saw Walker driving this car. (Doc. 14, Ex. 5, p. 314.)[9] Counsel also noted that Harris would have seen if anything passed between the driver of this vehicle and Nicole Roberson. (Id.) Counsel also emphasized that Little and Nicole Roberson, who personally knew Walker, were not asked to identify Walker's voice on the tape. (Id., p. 316.) Counsel questioned Mailhiot's identification of Walker's voice based on reviewing an hour of tape. (Id., p. 316-17.) Counsel argued to the jury repeatedly that the lack of physical evidence and reliable testimony showed the State failed to meet its burden. (Id., pp. 314-23.)

Walker does not establish a reasonable probability that his testifying to make the same points would have resulted in a different outcome at trial. While Walker asserts that the jury could have compared his voice to that on the tape, again, he does not state or establish that his voice was not on the tape. Moreover, counsel argued that the State presented no reliable evidence to establish that it was Walker's voice heard on the recording. Additionally, the state court identified numerous points in the record making clear that Little and Nicole Roberson knew Walker as both Alexander and Al. (Id., pp. 132-134, 138-139, 233-234, 239-244, 246-247.) Lastly, as the state court noted, the jury would have known that Walker had six prior felonies if he testified, and the jury could have

---

[9] Counsel stated:

> What else did [Harris] tell you? Very interesting. Been watching Mr. Walker a long time. Likes to drive with his elbow hanging out the window, and I always see his head when he drives by. On that day, did you see that? No. Have we seen other people in the car? Sure, unknown black males, Mrs. Walker. Other people have been in that car.

(Doc. 14, Ex. 5, p. 315.)

considered this in deciding whether he was credible.

Walker does not show the state court's conclusion that he failed to demonstrate prejudice was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. He does not show entitlement to relief on Ground Two.

**Ground Three**

Walker claims that counsel was ineffective for failing to call Precious Nelson to testify in support of his "mere presence" defense. He claims that counsel misadvised him that Nelson's testimony was not needed because the State would not obtain a conviction on its circumstantial evidence. Little's testimony indicates that Nelson was present at Carrie Roberson's house on July 24, 2003.[10] Walker claims that it was necessary to call Nelson so "the jury could frame a reasonable conclusion about how the drug transaction had taken place, that he never gave any drugs, by any means, to the confidential informant." (Doc. 1, p. 16.)

Walker raised this claim in his amended motion for postconviction relief, in which he also stated that Nelson would have testified that she called Deemo to purchase heroin; that Deemo and Little conducted the transaction in the back bedroom while she and Walker remained in the front of the house; that Deemo and Walker left without discussing any drug deal; and that she did not see Walker conduct a drug transaction with Deemo or Little. (Doc. 14, Ex. 11.)

**A.    Case Number CRC04-00285CFANO (July 24, 2003 Transaction Inside The House Involving Deemo)**

---

[10] Walker does not specify in his federal habeas petition which day's events would have been addressed in Nelson's testimony. Nor did he specify this matter in his amended postconviction motion. (Doc. 14, Ex. 11, pp. 69-73.) However, the state court interpreted Walker's claim as alleging that Nelson would have testified to the events of July 24, 2003.

The state court found that Walker did not establish prejudice as a result of counsel's

failure to call Nelson:

> The Defendant contends that counsel was ineffective for failing to call Precious Nelson as a trial witness. . . .
>
> In his amended motion, the Defendant contends that Precious Nelson was available to testify and would have testified that she called a man known as "Deemo" at Theodore Little's request to purchase heroin. The Defendant further alleges that Precious Nelson would have testified that after the Defendant and "Deemo" arrived at her residence, Theodore Little and "Deemo" went to another bedroom to conduct a drug transaction, while she and the Defendant remained in the living room, having no knowledge of the drug transaction. He further alleges that Precious Nelson would have testified that after "Deemo" and Theodore Little reappeared from the bedroom, "Deemo" and the Defendant left her house together without any discussion of a drug deal taking place. He alleges that Precious Nelson also would have testified that at no time did she witness the Defendant participate in a drug deal. The Defendant claims that had counsel called Precious Nelson as a witness to contradict the testimony of Theodore Little and Detective Mailhiot, the outcome of the trial would have been different.
>
> The State contends, and this Court agrees, that even if counsel had called Precious Nelson to testify in this case, as the Defendant claims that she would have, there is not a reasonable likelihood that the outcome of the trial would have been different. At the time of the Defendant's trial, Precious Nelson had been charged with trafficking in heroin. If she testified as the Defendant claims that she would have, then stating that she had called "Deemo" to set up a heroin transaction between him and Theodore Little would have been an incriminating admission that the State could have used against her. She would have additionally been subject to cross-examination regarding her testimony, further exposing her to the risk of making more incriminating admissions relating to her pending charge. Theodore Little testified that he had never met "Deemo" prior to this occasion, and when asked at trial if he knows now who the man accompanying the Defendant was, Theodore Little stated, "Dumo or something like that." Further, although Theodore Little testified that Precious Nelson had called the Defendant on a prior occasion, he did not testify that Precious Nelson called the Defendant or any other person in relation to the transaction that occurred on July 24, 2003, which was the transaction at issue for case number CRC04-00285CFANO. Instead, Theodore Little testified that there was never a conversation about how much he would pay for the heroin and how much he would receive because he and the Defendant had worked that out prior to the transaction. Therefore, this testimony would not have served to impeach Theodore Little's testimony in this case.
>
> Additionally, the Defendant claims that Precious Nelson would have

testified that "Deemo" and Theodore Little went into another room to conduct a drug transaction, with no discussion of anything relating to a drug transaction taking place in her presence.  Such testimony would not have been admissible at trial because Precious Nelson lacked personal knowledge of the events that she would be testifying to.  See § 90.604, Fla. Stat. (2005).  Thus, Precious Nelson would have only been able to testify that she remained with the Defendant in the front room, that "Deemo" and Theodore Little went to another part of the house, and that she did not witness a drug transaction.  This testimony would have only served to contradict Theodore Little's testimony that he and "Deemo" conducted the transaction at the television in the front room while he could see the Defendant seated in the kitchen.  Contradiction on such a minor point does not create a reasonable probability that the outcome of the trial would have been different.  The State explained that in order to find the Defendant guilty of the offense of trafficking in heroin, it did not even matter if the Defendant was present for the transaction.  Thus, his proximity to Theodore Little and "Deemo" in the house is a minor point that is not dispositive to the jury's determination of guilt in this case.  However, Precious Nelson's testimony would have been undermined by the fact that on the recording of the drug transaction that was admitted into evidence, which was corroborated by the testimony of Detective Mailhiot and Theodore Little, the jury heard Theodore Little speaking to the Defendant while the transaction was taking place.  Thus, the jury would have weighed the credibility of her testimony against the evidence that contradicted her, including the recording, Detective Mailhiot's testimony, and Theodore Little's testimony.  When considering the substance of what the Defendant claims Precious Nelson's testimony would have been in relation to all of the other evidence and testimony submitted at trial, there is not a reasonable probability that the outcome of the Defendant's trial would have been different.

Further, contrary to the Defendant's assertion that counsel's failure to call Precious Nelson as a witness deprived him of his sole defense, "mere presence," defense counsel did argue this defense on several occasions during the course of the trial.  Thus, the Defendant has not shown that he was prejudiced by counsel not calling Precious Nelson to testify.  This claim is therefore denied.

(Doc. 14, Ex. 14, pp. 522-25) (court's record citations omitted).

The record supports the state court's finding. Little testified that Nelson was present

at Carrie Roberson's house, and that he talked to Nelson and others before Walker and

Deemo arrived.  (Doc. 14, Ex. 2, pp. 249-51.)  But as the state court noted, Little did not

testify that Nelson called Walker regarding the transaction that occurred that day.[11]   Little also testified that upon arrival, Walker proceeded to the kitchen.   Little testified that, although Walker was only a few feet away, he and Deemo exchanged drugs and money in front of the television in the living room  (Doc. 14, Ex. 2, pp. 251-53.)   Accordingly, although Nelson's proposed testimony that Little and Deemo went into a bedroom to conduct the transaction would have contradicted Little on the exact location where Little and Deemo made the exchange, the jury still would have heard that Walker went into the kitchen when he arrived and that the transaction was between Little and Deemo.

In a related and important point, the state court noted that the jury was informed that Walker was not required to be present for the transaction to be convicted of trafficking.[12] Little testified that he agreed to purchase heroin from Walker, and that he and Walker already agreed upon the payment.  (Doc. 14, Ex. 2, pp. 252-53, 255-56.)   Therefore, the jury heard testimony that Little agreed to the purchase with Walker, but that Little provided the money to, and physically received the drugs from, Deemo.   Accordingly, given the totality of the evidence presented, Walker does not show a reasonable probability that Nelson's proposed testimony stating Walker was not involved in or aware of any transaction

---

[11] Little only testified that Nelson called Walker on July 1, 2003.  (Doc. 14, Ex. 2, p. 240.)

[12] The jury was instructed on the principal theory:

> If the defendant helped another person or persons commit or attempt to commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if, one, the defendant had a conscious intent that the criminal act be done, and, two, the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime.
> To be a principal, the defendant does not have to be present when the crime is committed or attempted to be committed.

(Doc. 14, Ex. 2, p. 325.)  The jury was also instructed that trafficking could be established through delivery, sale, or possession of heroin.  (Id., pp. 319-21.)

inside the house would have changed the outcome of trial.

In addition, Walker presents no evidence to support his contention that Nelson would have testified as he suggests.   *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.   A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).   As a result, the claim is too speculative to warrant relief.   *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful.   This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir.1985)).   *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).[13]

Accordingly, Walker fails to show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in finding that he failed to show a reasonable probability the outcome of trial would have been different had Nelson testified as Walker contends she would have. Walker does not show entitlement to relief on this portion of Ground Three.

---

[13] To the extent Walker argues in the federal habeas petition that Nelson also would have testified that Walker's voice was not on the audio tape, this allegation is unexhausted because he did not fairly present it to the state court.   (Doc. 14, Ex. 11.)   *See Anderson*, 459 U.S. at 6; *Weeks*, 26 F.3d at 1044-46.   Because he cannot return to state court to file another postconviction motion, the claim is procedurally defaulted.   *See Smith*, 256 F.3d at 1138.   Walker does not establish the applicability of either exception.   Notwithstanding the default, Walker does not show a reasonable probability this testimony would have changed the outcome of the trial, considering the totality of the evidence.   And, as addressed, his claim is too speculative to provide relief because Walker presents no evidence of the testimony Nelson would have provided.   *See Ashimi*, 932 F.2d at 650; *Johnson*, 256 F.3d at 1187; *Tejada*, 941 F.2d at 1559.

**B.     Case Number CRC04-00286CFANO (July 15, 2003 Transaction Inside The Vehicle Involving Nicole Roberson)**

Case number CRC04-00286CFANO concerned the July 15, 2003 incident in which Nicole Roberson provided forty-five baggies of heroin to Little after obtaining them from Walker. With respect to this case, the state court found counsel was not ineffective for failing to call Nelson because Nelson's testimony about subsequent events of July 24, 2003, would have been irrelevant and harmful:

> In its Response, the State contends, and this Court agrees, that even if counsel had called Precious Nelson to testify in this case, as the Defendant claims that she would have, there is not a reasonable likelihood that the outcome of the trial would have been different. The Defendant alleges that Precious Nelson would have testified regarding the drug transaction that took place on July 24, 2003, which was the subject of case number CRC04-00285CFANO. In this case, there was no reference to the events that took place on July 24, 2003, as <u>Williams</u> rule evidence or otherwise. Because Precious Nelson's testimony related solely to the events that occurred relating to the July 24, 2003, transaction, her testimony would not have been relevant in this case and therefore would have been inadmissible. <u>See</u> §§ 90.401-90.402, Fla. Stat. (2006). Even if Precious Nelson's testimony would have been admissible, admission of testimony regarding the transaction that occurred on July 24, 2003, would have only been harmful to the Defendant. Such testimony would have revealed to the jury the facts surrounding another drug transaction that the Defendant was associated with, which they would not have otherwise been exposed to. Counsel was not ineffective for failing to introduce inadmissible testimonial evidence, especially when that evidence would have been harmful to the defense. This claim is therefore denied.

(Doc. 14, Ex. 14, pp. 530.)

The record supports the state court's finding. Nelson's proposed testimony was not relevant to the events of July 15, 2003. As the state court noted, introducing her testimony about the subsequent events of July 24, 2003, would have harmed the defense because the jury otherwise would not have heard about that later transaction. Again, Walker presents no evidence to establish the information to which Nelson would have testified.

*See Ashimi*, 932 F.2d at 650.  His speculative claim does not warrant relief.  *See Johnson*, 256 F.3d at 1187; *Tejada*, 941 F.2d at 1559.  Walker does not demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in making its decision.  Ground Three provides no relief.[14]

**Ground Four**

Walker asserts that counsel was ineffective for not filing a motion to dismiss after Little testified that he had a financial stake in obtaining convictions.[15]  In support, Walker argues that Little's financial interest in the case amounted to a due process violation.

Walker raised this claim of ineffective assistance of counsel in ground twenty-five of his postconviction motion.  The state court summarily rejected his argument:

> The Defendant contends that counsel was ineffective for failing to file a motion to dismiss "after testimony that [Theodore Little] financially benefitted for his testimony."  He insists that counsel knew of the financial arrangement between Little and law enforcement whereby Little would receive a fee not only for cooperation and participation in drug deals, but also for testifying against the Defendant.  He further insists that counsel was also aware that Little testified during his deposition that he would receive "a bonus" upon the Defendant's conviction.  The Defendant asserts that, based on the foregoing, counsel should have filed a motion to dismiss the charges against the Defendant.  He claims that had counsel done so, the outcome of the proceedings would have been different.

---

[14] In his reply, Walker asserts that the state court was required to conduct an evidentiary hearing on the claim raised in his postconviction motion.  This assertion cannot provide federal habeas relief because it does not challenge the validity of Walker's conviction.  *See Carroll v. Sec'y DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment–*i.e.,* the conviction itself–and thus habeas relief is not an appropriate remedy.").

[15] Walker raises the argument with regard to both state court cases in the federal habeas petition. However, he only raised this claim under case number CRC04-00286CFANO in his postconviction motion. (Doc. 14, Ex. 12.) Therefore, the allegation was not fairly presented to the state court with regard to case number CRC04-00285CFANO.  As Walker cannot return to state court to file another postconviction motion, the claim is procedurally defaulted as to case number CRC04-00285CFANO.  *See Smith*, 256 F.3d at 1138. He does not establish the applicability of either exception.  Notwithstanding the default, Walker shows no entitlement to relief.  He cites, and a review of the trial transcript in case number CRC04-00285CFANO reveals, no evidence that would result in a conclusion different than that obtained with regard to case number CRC04-00286CFANO.

The Defendant's claim is without merit.  A defendant's due process rights are violated "in cases where an informant stands to gain a contingent fee conditioned on cooperation and testimony in the criminal prosecution." State v. Glosson, 462 So.2d 1082, 1085 (Fla. 1985).  In Glosson, the confidential information [sic] participated in a reverse-sting operation, wherein he acted as the seller, thereby giving the informant wide discretion in choosing who to deal with and greatly increasing the risk that the informant would choose a target based on their personal wealth.  Through the operation, several vehicles and $80,000 in cash were seized and law enforcement sought forfeiture of those assets.  Pursuant to the agreement with law enforcement, the confidential informant would receive 10% of all civil forfeitures arising out of successful criminal investigations in which he participated.  Id.  The Florida Supreme Court found this fee arrangement to violate due process.

The circumstances in the instant case, however, are more analogous to those found in Taylor v. State, 612 So.2d 626 (Fla. 1st DCA 1993).  In Taylor, the confidential information [sic] functioned as the buyer, significantly reducing his discretion, and was paid approximately $20 per buy.  The informant often made several buys in one day, although he never received more than approximately $250 in a single day.  The informant was also promised pay for court appearances and depositions.  The fee was neither contingent nor was it conditioned on cooperation and testimony.  Id.

In the instant case, Little also operated as the buyer with no discretion in choosing the targets.  Indeed, Little testified in his deposition that the Defendant was chosen by detectives and not himself.  Additionally, Little's fee was also much more modest than the arrangement in Glosson.  The Court also finds it noteworthy that the matter of the fee arrangement with Little was repeatedly discussed at trial and was a matter of credibility for the jury to determine.  Although the trial testimony regarding the fee arrangement was not entirely clear, under no view of the evidence could it be said that the arrangement between law enforcement and Little was that Little would be paid only when the State obtained a conviction.  In fact, Little's deposition testimony clarifies that he was paid on a deal-by-deal basis, that his fee was never a set figure, and often depended on how much cash Detective Mailhiot had in possession at the time of the deal.  Furthermore, in review of Little's deposition, at no point does he testify that he would receive "a bonus" or any other kind of additional payment upon the successful conviction of the Defendant.  Given the facts surrounding Little's role in the drug deals and his fee arrangement with the detectives, a motion to dismiss the charges against the Defendant would have proven meritless and counsel cannot be deemed ineffective for failing to file a meritless motion. . . .  Accordingly, Ground Twenty-Five is denied.

(Doc. 14, Ex. 13, pp. 100-101) (court's record citations omitted).

Walker fails to establish that the state court unreasonably applied *Strickland* or unreasonably applied the facts in coming to this conclusion.  At trial, Mailhiot agreed that Little worked for a substantial sum of money, but was unable to provide an exact amount. (Doc. 14, Ex. 5, p. 219.)  Little testified at trial that he did not know how much he was paid for his work as an informant over the last several years, but that Mailhiot paid him each time he made a deal.  (Id., pp. 232-33.)  He stated that he was paid to testify in court.  (Id., p. 255.)

In his deposition, Little testified that his payment in this case "was never a set payment.  It was always different."  (Doc. 14, Ex. 14, pp. 199-200.)  He stated that he was not sure how much he was paid but believed he usually received between $100 and $400 for engaging in a deal. (Id., pp. 209, 221, 233.)  The record supports the state court's conclusion that, while the fee arrangement was somewhat unclear, there is no evidence indicating Little was paid contingent upon the State obtaining a conviction of Walker, or that he expressed any expectation of obtaining a "bonus" upon Walker's conviction.[16]

The Supreme Court has recognized the possibility that law enforcement conduct may be "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction . . ."  *United States v. Russell*, 411 U.S. 423, 431-32 (1973).  However, to rise to this level, law enforcement conduct must "violat[e]

---

[16]In support of his claim, Walker presents an exhibit containing copies of eighty-three receipts.  (Doc. 10-1.) He alleges that these show a total of approximately $27,310 in payments to Little from the St. Petersburg Police Department for Little's work as an informant from 2003 to 2006. There is no indication from his postconviction motion that he provided this information to the state court.  (Doc. 14, Ex. 12.) A federal habeas court is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S. Ct. at 1398. Even assuming this exhibit was provided to the state court, it does not establish entitlement to relief.  It is not apparent that the receipts reflect any law enforcement payment to Little.  The receipts contain numerous redactions, and they state no information identifying Little or referencing Walker's cases.  The lone reference to "Walker" on one of the receipts does not establish that that receipt is related to Petitioner Alexander Walker's case or was issued regarding any payment to Little.  (Doc. 10-1, p. 4.)

that 'fundamental fairness, shocking to the universal sense of justice,'" required by due process. *Id.* (quoting *Kinsella v. United States ex. rel. Singleton*, 361 U.S. 234, 246 (1960)). Walker does not demonstrate that the state court's decision was contrary to established United States Supreme Court law. He does not cite any Supreme Court precedent deciding differently a case based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. at 412. Nor does he show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in concluding that counsel was not ineffective because any motion to dismiss the charges due to law enforcement's payments to Little would have failed.[17]

To the extent Walker asserts an independent due process violation, even assuming he fairly presented the claim to the state court,[18] he does not demonstrate a due process violation under the circumstances of his case. *See United States v. Rey*, 811 F.2d 1453, 1456 n.3 (11th Cir. 1987) (even the use of a contingently motivated informant is lawful "where payment is contingent on a successful investigation in general or successful investigation of a particular crime, rather than the successful prosecution of a particular individual."); *United States v. Gray*, 626 F.2d 494, 499 (5th Cir. 1980) ("[A]n informant's testimony will not be rejected unless there is evidence that he was promised payment contingent upon conviction of a particular person."); *Owen v. Wainwright*, 806 F.2d 1519,

---

[17] In *Glosson*, which the state court addressed in detail, the Florida Supreme Court specified that its decision was based on article I, section 9, of the Florida constitution and rejected the federal courts' "narrow application" of the due process defense. 462 So.2d at 1085.

[18] When he raised this claim in his postconviction motion, it was denied as procedurally barred because it should have been raised on direct appeal. (Doc. 14, Ex. 13, p. 99.) To the extent the claim was raised in Walker's postconviction motion, it is procedurally defaulted. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). It is not apparent from the record if Walker raised the claim on direct appeal. Even if he did, for the reasons addressed, Walker does not show that the claim has any merit.

1521-22 (11th Cir. 1986)  (cases involving allegations of official misconduct turn on the totality of the circumstances, and "extreme circumstances of outrageous government conduct must be shown before a court will find a due process violation.  We have held that government infiltration of criminal activity is a legitimate and permissible means of investigation and frequently requires that the government agent furnish something of value to the criminal.").

Furthermore, to the extent Walker asserts a due process violation based on his assertion that Little might have had financial incentive to entrap him into making transactions, he is not entitled to relief.  This claim is speculative and unsubstantiated, as Walker presents no evidence in support of his claim.  Moreover, he does not demonstrate that the claim has any merit.  *See Rey*, 811 F.2d at 1455 ("To the extent that *Williamson* [*v. United States*, 311 F.2d 441 (5th Cir. 1962)] held that the government's use of contingently-motivated informers creates an entrapment defense, it is no longer good law. The Supreme Court has subsequently held that the entrapment defense focuses on the subjective predisposition of the defendant to commit a crime, rather than on the conduct of the government.") (citing *Hampton v. United States*, 425 U.S. 484 (1976); *Russell*, 411 U.S. 423).  Walker fails to show entitlement to relief on Ground Four.

Accordingly, the Court ORDERS that Walker's Section 2254 petition is DENIED. The Clerk is directed to enter judgment against Walker and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

IT IS FURTHER ORDERED that Walker is not entitled to a certificate of appealability (COA).  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal

a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Walker "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Walker has not made the requisite showing in these circumstances.

Finally, because Walker is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

DONE in Tampa, Florida, on October 21, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Alexander Walker, Jr.
Counsel of Record